FILED

2014 SEP 26 PM 1: 10

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

1 DAVID R. ZARO (BAR NO. 124334)
  TED FATES (BAR NO. 227809)
2 TIM C. HSU (BAR NO. 279208)
  ALLEN MATKINS LECK GAMBLE
3   MALLORY & NATSIS LLP
  515 South Figueroa Street, Ninth Floor
4 Los Angeles, California 90071-3309
  Phone: (213) 622-5555
5 Fax: (213) 620-8816
  E-Mail: dzaro@allenmatkins.com
6         tfates@allenmatkins.com
          thsu@allenmatkins.com
7
  Attorneys for Court-appointed Receiver
8 KRISTA L. FREITAG

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12 KRISTA L. FREITAG, Court-Appointed    Case No. CV-14  07518-SJO(AGRx)
   Permanent Receiver for World Capital
13 Market Inc.; WCM777 Inc.; WCM777      COMPLAINT FOR FRAUDULENT
   Ltd. d/b/a WCM777 Enterprises, Inc.;  TRANSFER, UNJUST ENRICHMENT,
14 Kingdom Capital Market, LLC; Manna    AND CONSTRUCTIVE TRUST
   Holding Group, LLC; Manna Source
15 International, Inc.; WCM Resources,
   Inc.; ToPacific Inc.; To Pacific Inc.; and
16 their subsidiaries and affiliates ,

17            Plaintiff,

18      v.

19 GOVERNMENTAL IMPACT, INC.;
   JAMES DANTONA; ZAYDA ABERIN;
20 and ZHB INTERNATIONAL CORP.,

21            Defendants.

22

23

24      Plaintiff Krista L. Freitag (the "Receiver"), the Court-appointed permanent

25 receiver for World Capital Market Inc.; WCM777 Inc.; WCM777 Ltd. d/b/a

26 WCM777 Enterprises, Inc.; Kingdom Capital Market, LLC; Manna Holding Group,

27 LLC; Manna Source International, Inc.; WCM Resources, Inc.; ToPacific Inc.; To

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1  Pacific Inc.; and their subsidiaries and affiliates (the "Receivership Entities"),

2  hereby brings the following Complaint against the above-captioned Defendants and

3  alleges, on behalf of the Receivership Entities, as follows:

4  **I.    JURISDICTION AND VENUE.**

5       1.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 1345

6  and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this

7  action arises from a common nucleus of operative facts as, and is substantially

8  related to the original claims in, the Securities and Exchange Commission (the

9  "Commission") enforcement action styled as <u>Securities and Exchange Commission</u>

10 <u>v. World Capital Market Inc., et al.</u>, U.S.D.C., C.D. Cal. Case No. 14-CV-2334-

11 JFW-MRW (the "SEC Action").

12      2.    This Court may exercise personal jurisdiction over the above-captioned

13 Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A).

14      3.    Venue in the Central District of California is proper under 28 U.S.C.

15 § 1391 because this action is an ancillary proceeding to the SEC Action and because

16 the Receiver was appointed in this District pursuant to the Preliminary Injunction,

17 Appointment of a Permanent Receiver, and Related Orders entered by this Court on

18 April 10, 2014 (the "Preliminary Injunction"), and the Order Freezing Assets,

19 Requiring Accountings, Prohibiting the Destruction of Documents, Granting

20 Expedited Discovery, Repatriating Assets, and Appointing a Receiver Over Relief

21 Defendants ToPacific Inc., a Delaware Corporation and To Pacific Inc., a California

22 Corporation entered by this Court on May 21, 2014 (the "Freeze Order") (together

23 the "Appointment Orders").

24 **II.    PARTIES.**

25      4.    The Receiver is the duly appointed permanent receiver for the

26 Receivership Entities, and was appointed permanent receiver for the Receivership

27 Entities pursuant to the Appointment Orders.  Among other things, the Appointment

28 Orders call for the Receiver to recover and marshal, for the benefit of creditors of

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-2-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

1  and investors in the Receivership Entities, any and all assets which were owned,

2  leased, occupied, or otherwise controlled by the Receivership Entities or were

3  otherwise purchased with assets of the Receivership Entities.  The Receiver holds

4  exclusive authority and control over the assets of the Receivership Entities,

5  including over the causes of action alleged herein, over which this Court has

6  ancillary and supplemental jurisdiction.

7       5.    On information and belief, James Dantona ("Dantona") is a citizen and

8  resident of the County of Ventura, California, and is the recipient of assets of the

9  Receivership Entities as described further herein.

10      6.    On information and belief, Governmental Impact, Inc. ("GII") is a

11 California corporation located and has its principal place of business in Simi Valley,

12 California, and is the recipient of assets of the Receivership Entities as described

13 further herein.  GII is owned and operated by Dantona.

14      7.    On information and belief, Zayda Aberin ("Aberin") is a citizen and

15 resident of the County of Los Angeles, California, and is the recipient of assets of

16 the Receivership Entities as described further herein.

17      8.    On information and belief, ZHB International, Corp. ("ZHB") is a

18 California corporation located and has its principal place of business in Calabasas,

19 California, and is the recipient of assets of the Receivership Entities as described

20 further herein.  ZHB is owned and operated by Aberin.

21 **III.   FACTUAL ALLEGATIONS**

22      **A.    The Purported Business Of The Receivership Entities And The**

23            **Commencement Of The SEC Action.**

24      9.    As alleged by the Commission in the SEC Action, the Receivership

25 Entities, individually and collectively, raised money from investors based on

26 misrepresentations that the Receivership Entities were engaged in a profitable multi-

27 level marketing venture that sells packages of "cloud media" or cloud services under

28 the umbrella name for the scheme, "WCM777."  Investors were promised returns of

1   more than 100% on their investment in 100 days, and were also assigned "points"

2   for their investments which were characterized as convertible into equity through

3   initial public offerings of "high tech" companies the Receivership Entities were

4   purportedly incubating.  Through the use of the points system, the Receivership

5   Entities facilitated a "secondary market" in the points awarded to investors, and an

6   estimated $890 million of the points have been traded on this market.

7        10.    In actuality, the Receivership Entities did not realize any appreciable

8   revenue other than from the sale of "packages" of cloud services to investors.

9   WCM777 is not profitable, and is a pyramid scheme.  Investor funds were used to

10   make Ponzi payments of returns promised to earlier investors.  Much of the

11   remaining funds derived from these investments were used to purchase real property

12   in the United States, play the stock market and to make other speculative

13   investments.

14        11.    On or about March 27, 2014, the Commission initiated the SEC Action

15   against the Receivership Entities, Ming Xu a/k/a Phil Ming Xu ("Xu"), a principal

16   of the Receivership Entities, and others, alleging violations of federal securities

17   laws.  ToPacific Inc. and To Pacific Inc. were added as Relief Defendants to the

18   SEC Action on May 7, 2014.  The Commission petitioned for the Receiver's

19   appointment, and on April 10, 2014 and May 21, 2014, this Court entered the

20   Appointment Orders appointing the Receiver as permanent receiver for the

21   Receivership Entities.

22      **B.    The Receiver's Authority And Investigation Pursuant To Her**

23             **Appointment.**

24        12.    Pursuant to the terms of her appointment, the Receiver is vested with

25   exclusive authority and control over the assets of the Receivership Entities.

26   Specifically, Article XII of the Preliminary Injunction and Article VIII of the Freeze

27   Order vests the Receiver with the "full powers of an equity receiver, including, but

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-4-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

1  not limited to .... *full power to sue* ... and take into possession all [receivership]

2  property." (emphasis added.)

3       13.    The Receiver's investigation to date supports and confirms the

4  Commissions allegations in the SEC Action, including that ToPacific, Inc.

5  ("ToPacific") was used to receive funds raised from investors in the scheme.

6  ToPacific did not generate any material revenue other than funds received from

7  investors.

8      **C.**    **The Fraudulent Transfers of Funds To GII From The Receivership**

9           **Entities.**

10       14.    In January and March 2014, ToPacific Inc. ("ToPacific") made

11  payments to GII in the aggregate amount of $750,000. The first check, in the

12  amount of $500,000, was dated January 30, 2014 and was deposited into GII's

13  account at JPMorgan Chase Bank, N.A. on or about January 31, 2014. The second

14  check, in the amount of $250,000 was dated March 1, 2014 and was similarly

15  deposited into the same bank account on or about March 4, 2014. These payments

16  were made in connection with a purported agreement dated January 30, 2014 for GII

17  to provide certain consulting and governmental advocacy services (the

18  "Agreement"). A true and correct copy of the Agreement is attached hereto as

19  **Exhibit A**.

20       15.    Other than meeting with Xu on two occasions, GII and Dantona

21  provided no consulting, governmental advocacy, or other services under the

22  Agreement.

23      **D.**    **The Subsequent Transfer Of Funds To Dantona.**

24       16.    Of the funds transferred to GII, approximately $266,500 was

25  subsequently transferred to Dantona or paid for his personal benefit through a series

26  of transfers and payments as follows:

| Date | Check No. | Payee | Amount |
|------|-----------|-------|--------|
| February 7, 2014 | 7169 | Dantona | $75,000 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-5-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

| | | | | |
|---|---|---|---|---|
| 1 | February 12, 2014 | 7171 | Bamieh&Erickson | $100,000 |
| 2 | February 19, 2014 | 7172 | Jenny Dantona | $1,000 |
| 3 | March 9, 2014 | 7176 | Jenny Dantona | $500 |
| 4 | March 11, 2014 | 7191 | Dantona | $20,000 |
| 5 | April 6, 2014 | 7202 | Dantona | $10,000 |
| 6 | April 24, 2014 | 7205 | Bamieh&Erickson | $9,500 |
| 7 | April 24, 2014 | 7206 | Jenny Dantona | $500 |
| 8 | April 28, 2014 | 7207 | Dantona | $20,000 |
| 9 | May 6, 2014 | 7208 | Dantona | <u>$30,000</u> |
| 10 | | | Total: | $266,500 |

11       17.    Dantona did not receive the funds in good faith and did not provide any

12 reasonably equivalent value or consideration in exchange for the $266,500

13 transferred to him or paid for his benefit.  As GII's principal, Dantona was fully

14 aware of the circumstances under which GII obtained the $750,000 from ToPacific

15 and Xu and that GII had provided no services to ToPacific or Xu.

16      **E.**    **The Subsequent Transfer Of Funds To Aberin And ZHB.**

17       18.    Of the $750,000 paid to GII, $325,000 was subsequently transferred

18 from GII's bank account to Aberin and her company ZHB as follows:

| **Date** | **Check No.** | **Payee** | **Amount** |
|---|---|---|---|
| February 4, 2014 | 7167 | Aberin | $100,000 |
| February 4, 2014 | 7168 | ZHB | $100,000 |
| March 4, 2014 | 7174 | ZHB | <u>$125,000</u> |
| | | Total: | $325,000 |

24       19.    Aberin introduced Xu to GII, attended the few meetings that took place

25 between Xu and GII, and therefore was fully aware of the circumstances under

26 which GII obtained the funds from ToPacific.  Aberin and her company ZHB did

27 not receive the funds in good faith and did not provide any reasonably equivalent

28 value or consideration in exchange for the $325,000 transferred to them.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

20.   There is a sufficient unity of interest and ownership between Aberin and ZHB such that the separate personalities of the two do not in reality exist. ZHB is the alter ego of Aberin because its bank accounts have been comingled with Aberin's personal finances and ZHB is sufficiently undercapitalized such that it is a mere shell, conduit or instrumentality. Further, nearly all of the funds transferred to ZHB by GII have been used to pay Aberin's personal loans and obligations, including payments made for Aberin's personal mortgage in excess of $240,000.

21.   On information and belief, Aberin controls the finances of ZHB and has consistently used ZHB funds for personal purposes as described above.

22.   It would be inequitable to recognize ZHB's corporate form separate and apart from Aberin in issuing a judgment for disgorgement. Accordingly, to avoid injustice, any judgment entered for disgorgement of the $325,000 transferred to Aberin and ZHB should be entered against them jointly and severally.

### COUNT I – FRAUDULENT TRANSFER
### (As Against GII)

23.   The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 22, inclusive, hereinabove set forth.

24.   Over the course of its pre-receivership operations, ToPacific paid $750,000 in the aggregate to GII with the intent to hinder, delay, or defraud creditors. Such payments were made from the proceeds of a Ponzi scheme which were generated from investors in the scheme.

25.   GII did not accept the funds in good faith and the Receivership Entities received no reasonably equivalent value or consideration, directly or indirectly, in exchange.

26.   At the time ToPacific paid GII the subject $750,000, ToPacific was engaged or about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-7-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

27.　ToPacific was insolvent, or became insolvent shortly after the subject $750,000 payments were made to Dantona and GII.

28.　ToPacific intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

29.　As a consequence of the above, the full amount of the $750,000 transferred to GII is an actual and constructively fraudulent transfer under Calfornia's Uniform Fraudulent Transfer Act ("CUFTA"), Cal. Civ. Code § 3439, *et seq.*, and is subject to immediate disgorgement to the Receiver.

## COUNT II – UNJUST ENRICHMENT

### (As Against GII)

30.　The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 29, inclusive, hereinabove set forth.

31.　As described in more detail above, ToPacific paid $750,000 to GII in connection with the Agreement. Such payments were made from the proceeds of a Ponzi scheme which were generated from investors in the scheme.

32.　GII did not accept the funds in good faith and the Receivership Entities received no equivalent value or consideration in exchange therefore.

33.　GII has thus been unjustly enriched in the amount of $750,000, which amount is subject to immediate disgorgement to the Receiver.

## COUNT III – CONSTRUCTIVE TRUST

### (as against GII)

34.　The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 33, inclusive, hereinabove set forth.

35.　GII has been unjustly enriched in the amount of $750,000 as a result of its receipt of payments from ToPacific. Such payments were made from the proceeds of a Ponzi scheme which were generated from investors in the scheme.

36.　Because GII has been unjustly enriched in the amount of $750,000, it holds that amount in constructive trust for the Receivership Entities.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-8-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

1       37.    The Receiver is therefore entitled to a judgment of $750,000 against

2   GII.

3   **COUNT IV – FRAUDULENT TRANSFER**

4   **(As Against Dantona)**

5       38.    The Receiver incorporates herein each and every allegation contained

6   in Paragraphs 1 through 37, inclusive, hereinabove set forth.

7       39.    Of the $750,000 transferred to GII, the amount of $266,500 was

8   subsequently transferred to Dantona or for his benefit.  Such transfers and payments

9   were made with funds transferred to GII by ToPacific, which funds were derived

10  from the proceeds of a Ponzi scheme generated from investors in the scheme.

11      40.    Dantona did not accept the funds in good faith and provided no

12  reasonably equivalent value or consideration, directly or indirectly, in exchange.

13      41.    At the time ToPacific paid GII the subject $750,000, ToPacific was

14  engaged or about to engage in a business or transaction for which its remaining

15  assets were unreasonably small in relation to the business or transaction.

16      42.    ToPacific was insolvent, or became insolvent shortly after the subject

17  $750,000 payments were made to GII.

18      43.    ToPacific intended to incur, or believed or reasonably should have

19  believed that it would incur, debts beyond its ability to pay as they became due.

20      44.    As a consequence of the above, the amount of $266,500 paid to

21  Dantona or for his benefit is an actual and constructively fraudulent transfer under

22  the CUFTA, and is thus subject to immediate disgorgement to the Receiver.

23  **COUNT V – UNJUST ENRICHMENT**

24  **(As Against Dantona)**

25      45.    The Receiver incorporates herein each and every allegation contained

26  in Paragraphs 1 through 44, inclusive, hereinabove set forth.

27      46.    Dantona is the recipient or beneficiary of subsequent transfers and

28  payments made by GII.  Such transfers and payments were made with funds

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-9-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

1    transferred to GII by ToPacific, which was derived from the proceeds of a Ponzi-

2    like scheme generated from investors in the scheme.

3       47.    Dantona did not accept the funds in good faith and provided no

4    reasonably equivalent value or consideration, directly or indirectly, in exchange.

5       48.    Dantona has thus been unjustly enriched in the amount of $266,000,

6    which amount is subject to immediate disgorgement to the Receiver.

7                 **COUNT VI – CONSTRUCTIVE TRUST**

8                      **(as against Dantona)**

9       49.    The Receiver incorporates herein each and every allegation contained

10    in Paragraphs 1 through 48, inclusive, hereinabove set forth.

11       50.    Dantona is the recipient or beneficiary of subsequent transfers and

12    payments made by GII. Such transfers and payments were made with funds

13    transferred to GII by ToPacific, which was derived from the proceeds of a Ponzi-

14    like scheme generated from investors in the scheme.

15       51.    Because Dantona has been unjustly enriched in the amount of

16    $266,500, he holds that amount in constructive trust for the Receivership Entities.

17       52.    The Receiver is therefore entitled to a judgment of $266,500 against

18    Dantona.

19                 **COUNT VII – FRAUDULENT TRANSFER**

20                **(As Against Aberin and ZHB)**

21       53.    The Receiver incorporates herein each and every allegation contained

22    in Paragraphs 1 through 52, inclusive, hereinabove set forth.

23       54.    Of the $750,000 transferred to GII, the amount of $325,000 was

24    subsequently transferred to Aberin and ZHB. Such transfers were made with funds

25    transferred to GII by ToPacific, which funds was derived from the proceeds of a

26    Ponzi-like scheme generated from investors in the scheme.

27       55.    Aberin and ZHB did not accept the funds in good faith and provided no

28    reasonably equivalent value or consideration, directly or indirectly, in exchange.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-10-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

56.    At the time ToPacific paid GII the subject $750,000, ToPacific was engaged or about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

57.    ToPacific was insolvent, or became insolvent shortly after the subject $750,000 payments were made to GII.

58.    ToPacific intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

59.    As a consequence of the above, the amount of $325,000 subsequently transferred to Aberin and ZHB is an actual and constructively fraudulent transfer under the CUFTA, and is thus subject to immediate disgorgement to the Receiver.

60.    There is a sufficient unity of interest and ownership between Aberin and ZHB such that the separate personalities of the two do not in reality exist.  As described above, ZHB is the mere alter ego of Aberin and it would thus be inequitable to recognize ZHB's corporate form separate and apart from Aberin in issuing a judgment for disgorgement.  Accordingly, to avoid injustice, judgment for disgorgement in the amount of $325,000 should be entered against Aberin and ZHB jointly and severally.

## COUNT VIII – UNJUST ENRICHMENT
### (As Against Aberin and ZHB)

61.    The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 60, inclusive, hereinabove set forth.

62.    Aberin and ZHB are the recipients of subsequent transfers made by GII.  Such transfers were made with funds transferred to GII by ToPacific, which was derived from the proceeds of a Ponzi-like scheme generated from investors in the scheme.

63.    Aberin and ZHB did not accept the funds in good faith and provided no reasonably equivalent value or consideration, directly or indirectly, in exchange.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-11-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

64.     Aberin and ZHB have thus been unjustly enriched in the amount of $266,000, which amount is subject to immediate disgorgement to the Receiver.

## COUNT IX – CONSTRUCTIVE TRUST

### (as against Aberin and ZHB)

65.     The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 64, inclusive, hereinabove set forth.

66.     Aberin and ZHB are the recipients of subsequent transfers made by GII.  Such transfers were made with funds transferred to GII by ToPacific, which was derived from the proceeds of a Ponzi-like scheme generated from investors in the scheme.

67.     Because Aberin and ZHB have been unjustly enriched in the amount of $325,000, they hold that amount in constructive trust for the Receivership Entities.

68.     The Receiver is therefore entitled to a judgment of $325,000 against Aberin and ZHB.

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-12-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

**PRAYER FOR RELIEF**

WHEREFORE, the Receiver prays for judgment against the Defendants as follows:

**On Count I: [GII]**

(a)     For a judgment against GII, avoiding the transfer of the subject $750,000; and

(b)     For an order directing GII to immediately pay $750,000, plus prejudgment interest and costs, to the Receiver; and

(c)     For such other and further relief as the Court may deem proper.

**On Count II: [GII]**

(a)     For a judgment against GII in the amount of $750,000, plus prejudgment interest and costs; and

(b)     For an order directing GII to immediately pay $750,000, plus prejudgment interest and costs, to the Receiver; and

(c)     For such other and further relief as the Court may deem proper.

**On Count III:[GII]**

(a)     For a judgment against GII in the amount of $750,000, plus prejudgment interest and costs; and

(b)     For an order declaring GII to be holding $750,000, plus prejudgment interest and costs, in constructive trust for the Receivership Entities; and

(c)     For such other and further relief as the Court may deem proper.

**On Count IV: [Dantona]**

(a)     For a judgment against Dantona, avoiding the subsequent transfers or payments made for Dantona's benefit in the amount of $266,500; and

(b)     For an order directing Dantona to immediately pay $266,500, plus prejudgment interest and costs, to the Receiver; and

(c)     For such other and further relief as the Court may deem proper.

1    **On Count V: [Dantona]**

2    (a)    For a judgment against Dantona in the amount of $266,500, plus

3    prejudgment interest and costs; and

4    (b)    For an order directing Dantona to immediately pay $266,500, plus

5    prejudgment interest and costs, to the Receiver; and

6    (c)    For such other and further relief as the Court may deem proper.

7    **On Count VI: [Dantona]**

8    (a)    For a judgment against Dantona in the amount of $266,500, plus

9    prejudgment interest and costs; and

10   (b)    For an order declaring Dantona to be holding $266,500, plus

11   prejudgment interest and costs, in constructive trust for the Receivership Entities;

12   and

13   (c)    For such other and further relief as the Court may deem proper.

14   **On Count VII: [Aberin and ZHB]**

15   (a)    For a judgment, jointly and severally, against Aberin and ZHB,

16   avoiding the transfers to them in the amount of $325,000; and

17   (b)    For an order directing Aberin and ZHB to immediately pay $325,000,

18   plus prejudgment interest and costs, to the Receiver; and

19   (c)    For such other and further relief as the Court may deem proper.

20   **On Count VIII: [Aberin and ZHB]**

21   (a)    For a judgment, jointly and severally, against Aberin and ZHB in the

22   amount of $325,000, plus prejudgment interest and costs; and

23   (b)    For an order directing Aberin and ZHB to immediately pay $325,000,

24   plus prejudgment interest and costs, to the Receiver; and

25   (c)    For such other and further relief as the Court may deem proper.

26   **On Count IX: [Aberin and ZHB]**

27   (a)    For a judgment, jointly and severally, against Aberin and ZHB in the

28   amount of $325,000, plus prejudgment interest and costs; and

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-14-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

1        (b)     For an order declaring Aberin and ZHB to be holding $325,000, plus

2  prejudgment interest and costs, in constructive trust for the Receivership Entities;

3  and

4        (c)     For such other and further relief as the Court may deem proper.

5

6  Dated:  September 26, 2014             ALLEN MATKINS LECK GAMBLE
                                            MALLORY & NATSIS LLP
7                                        DAVID R. ZARO
                                         TED FATES
8                                        TIM C. HSU

9                                        By: _____

10                                          TIM C. HSU
                                            Attorneys for Court-appointed
11                                          Receiver
                                            KRISTA L. FREITAG
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

993806.03/LA

-15-

COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND
CONSTRUCTIVE TRUST

# EXHIBIT A



**GOVERNMENTAL
IMPACT**
P.O. Box 1438
Simi Valley, CA 93062
(p) 805.583.1014
(f) 805.413.2005
govimpact.com

### AGREEMENT BETWEEN DR. PHIL MING XU AND
### GOVERNMENTAL IMPACT,
### A CALIFORNIA CORPORATION, FOR
### STATE AND FEDERAL GOVERNMENTAL ADVOCACY SERVICES

1. This Agreement entered into this 30th, day of January, 2014, by and between DR. PHIL MING XU hereinafter called, "DPMX" and GOVERNMENTAL IMPACT, a California Corporation, hereinafter called "Contractor."

### RECITALS

**WHEREAS**, DPMX is seeking to obtain professional consulting and governmental advocacy services to assist it in achieving success in dealing with the State and Federal Legislatures; and

**WHEREAS**, Contractor will employ personnel who are specially trained, and/or possess certain skills, experience, education, contacts and competency required to advocate DPMX's interests with government officials in California and Washington DC, and

**WHEREAS**, DPMX desires to engage Contractor in the performance of governmental advocacy and consulting services upon the terms and conditions herein provided:

**NOW, THEREFORE**, the parties hereto do mutually agree as follows:

1.  PROFESSIONAL SERVICES TO BE PERFORMED BY CONTRACTOR

    DPMX hereby agrees to engage Contractor, and Contractor agrees to provide professional consulting advice and governmental advocacy to DPMX as hereinafter set forth.

2.  SCOPE OF CONTRACTOR'S PROFESSIONAL SERVICES PROVIDED UNDER THE CONTRACT

    Contractor will perform services for DPMX in accordance with the terms, conditions and specifications set forth herein.

    The Contractor's Scope of Work under this contract includes the following:

    - Help in locating and securing legislators and other leaders for DPMX by working closely and effectively with legislative leadership and staff to fashion a better understanding of government.

- Assist DPMX to obtain effective access to key legislative leaders and appointed decision makers in California and Washington DC.

- Communicate, collaborate and coordinate DPMX's funding advocacy strategies designed to secure success.

- Identify, evaluate, prioritize and recommend to DPMX successful political strategies and effective public relations programs designed to understand State and Federal Government.

- Keep DPMX informed on progress as well as key dates and other important information.

3. **INDEPENDENT CONTRACTOR**

The parties agree that DPMX is interested only in the results obtained and that the Contractor shall perform as an independent contractor with sole control of the manner and means and methods of work which shall not be subject to the control or supervision by DPMX except as to results of the work.

No relationship of employer and employee is created by this contract. It is expressly understood and agreed by the parties that Contractor's employees shall in no event be entitled to any benefits to which DPMX's employees are entitled, including but not limited to, overtime, sick leave, vacation pay, retirement benefits, social security, workers' compensation, disability, unemployment insurance benefits, or employee benefits of any kind.

It is further understood and agreed by the parties hereto that, except as provided in this contract, Contractor in the performance of its obligation hereunder, is subject to the control or direction of DPMX merely as to the result to be accomplished by the services hereunder agreed to be rendered and performed and not as to the means and methods for accomplishing the results.

If, in the performance of this contract, any third persons are employed by Contractor, such persons will be entirely and exclusively under direction, supervision and control of Contractor. All terms of employment of such third persons will be determined by Contractor, and approved by DPMX.

4. **NON-ASSIGNABILITY**

Contractor will not assign this Contract or any portion thereof, to a third party without the prior written consent of DPMX, and any attempted assignment without such prior written consent will be null and void and will be cause, at DPMX's sole and absolute discretion, for immediate termination of this Contract.

5.    **TERM**

This Contract will be in effect during the period beginning January 30th, 2014 through January 29th 2015.  At that point the contract will terminate with the option to renegotiate or be extended based on mutual agreement of both parties.

6.    **COMPENSATION AND EXPENSES**

DPMX shall pay the Contractor for professional consulting and governmental advocacy services performed in accordance with the terms of this Agreement in the amount of a $750,000.00 Flat Fee.  $500,000.00 will be paid to the contractor upon signing of the contract and another $250,000.00 due on April 30th.  In addition the Contractor shall be paid by DPMX any and all expenses incurred within 30 days after Contractor invoice has been received by DPMX.  Upon successful completion of project Contractor will be paid a success bonus of $250,000.00 within a period of 60 days.

7.    **TERMINATION**

Either party may terminate this contract at any time for any reason by providing 30 days' advance written notice to Contractor. In the event of termination under this paragraph, DPMX shall not be entitled to any refund for any reason.

8.    **INVESTIGATION AND RESEARCH**

Contractor by investigation and research has acquired reasonable knowledge of all conditions affecting the work to be done and labor and material needed, and the execution of this Contract is to be based upon such investigation and research, and not upon any representation made by DPMX or any of its officers, agents or employees, except as provided herein.

9.    **ADDENDA**

DPMX may from time to time require changes in the scope of the services required hereunder.

10. **CONFIDENTIALITY**

Any reports, information, data, statistics, forms, procedures, systems, studies and any other communication or form of knowledge given to or prepared or assembled by Contractor under this Contract which DPMX requests in writing to be kept confidential, will not be made available to any individual or organization by Contractor without the prior written approval of the DPMX except as authorized by law.

11. **NOTICES**

All notices required under this Contract will be made in writing and addressed or delivered as follows:

TO DPMX:

      DR. PHIL MING XU
      150 S. LOS ROBLES
      PASADENA, CA. 91101-2486

TO CONTRACTOR:    JAMES DANTONA, PRESIDENT
                    GOVERNMENTAL IMPACT
                    P.O BOX 1438
                    SIMI VALLEY, CALIFORNIA 93062

Either party may, by giving written notice in accordance with this paragraph, change the names or addresses of the persons of designated for receipt of future notices. When addressed in accordance with this paragraph and deposited in the United States mail, postage prepaid, notices will be deemed given on the third day following such deposit in the United States mail. In all other instances, notices will be deemed given at the time of actual delivery.

12. **MERGER CLAUSE**

This Contract supersedes any and all other contracts, either oral or written, between Contractor and DPMX, with respect to the subject of this contract. This contract contains all of the covenants and contracts between the parties with respect to the services required hereunder. Contractor acknowledges that no representations, inducements, promises or contracts have been made by or on behalf of DPMX



except those covenants and contracts embodied in this contract.   No contract, statement, or promise not contained in this contract will be valid or binding.

13.    **GOVERNING LAW**

The validity of this contract and any of its terms or provisions, as well as the rights and duties of the parties under this contract, will be construed pursuant to and in accordance with the laws of the designated State.

14.    **SEVERABILITY OF CONTRACT**

If any term of this contract is held by a court of competent jurisdiction to be void or unenforceable, the remainder of the contract terms will remain in full force and effect and will not be affected.

15.    **COMPLIANCE WITH LAWS**

Each party to this contract will comply with all applicable laws.

**DISCLAIMER OF GUARANTEE.**  Nothing in this Contract and nothing in Contractor's statements to Client will be construed as a promise or guarantee about the outcome of Client's matter.  Contractor makes no such promises or guarantees.  Contractor's comments about the outcome of Client's matter are expressions of opinion only.

IN WITNESS WHEREOF the parties hereto have executed this Contract.

DR. PHIL MING XU

by: _____
Authorized Signature

_____
Printed Name          *Ming Xu*

_____
Title

_____
Date          1/30/14

GOVERNMENTAL IMPACT

by: _____
Authorized Signature

_____
Printed Name          *JAMES R DANTONA*

_____
Title          *PRESIDENT*

_____
Date          1/30/14

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| KRISTA L. FREITAG, Court-Appointed Permanent Receiver for World Capital Market Inc.; WCM777 Inc.; WCM777 Ltd. d/b/a WCM777 Enterprises, Inc.; Kingdom Capital Market, LLC; Manna Holding Group, LLC; Manna Source International, Inc.; WCM Resources, Inc.; ToPacific Inc.; To Pacific Inc.; and their subsidiaries and affiliates | ) ) ) ) ) ) ) ) |
| *Plaintiff(s)* | ) ) ) |
| v. | ) ) |
| GOVERNMENTAL IMPACT, INC.; JAMES DANTONA; ZAYDA ABERIN; and ZHB INTERNATIONAL CORP. | ) ) ) ) ) |
| *Defendant(s)* | ) |

Civil Action No.

CV14   07518 - SJO(AGRx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
GOVERNMENTAL IMPACT, INC.  - 5775 East Los Angeles, Street, Suite 222, Simi Valley, CA 93063
JAMES DANTONA -  5775 East Los Angeles Street, Suite 222, Simi Valley, CA 93063
ZAYDA ABERIN -   5924 Normandy Drive, Calabasas, CA 91302
ZHB INTERNATIONAL CORP - 5924 Normandy Drive, Calabasas, CA 91302

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
David R. Zaro
Ted Fates
Tim C. Hsu
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
515 South Figueroa Street, 9th Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Facsimile: (213) 620-8816

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date:   SEP 2 6 2014

CLERK OF COURT

ANDRES PEDRO

*Signature of Clerk or Deputy Clerk*

1202


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:


American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

KRISTA L. FREITAG, Court-Appointed  Permanent Receiver for World Capital Market; WCM777 Inc., WCM777 Ltd. d/b/a/ WCM777 Enterprises, Inc.; Kingdom Capital Market, LLC; Manna Holdng Group, LLC; Manna Source International, Inc.; WCM Resources, Inc.; ToPacific Inc.; To Pacific Inc.; and their subsidiaries and affiliates

**(b)** County of Residence of First Listed Plaintiff    Los Angeles

*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

David R. Zaro (SBN 124334); Ted Fates SBN 227809);
Tim A. J. Hsu (SBN 279208)    Phone: (213) 622-5555
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
515 South Figueroa Street, 9th Floor
Los Angeles, California 90071-3309

**DEFENDANTS**    ( Check box if you are representing yourself ☐ )

GOVERNMENTAL IMPACT, INC.; JAMES DANTONA; ZAYDA ABERIN; and ZHB INTERNATIONAL CORP.

County of Residence of First Listed
Defendant    Los Angeles

*(IN U.S. PLAINTIFF CASES ONLY)*

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No    (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ 750,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

Securities and Exchange Commission Receiver action for Fraudulent Transfer, etc.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☒ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

CV14   07518

**FOR OFFICE USE ONLY:**    Case Number:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.   VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.<br>☒ NO. Continue to Question B.2. |
|---|---|---|
| ☒ Yes   ☐ No<br><br>If "no," skip to Question C.  If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.<br>☒ NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.<br>☐ NO.  Continue to Question C.2. |
|---|---|---|
| ☐ Yes   ☒ No<br><br>If "no, " skip to Question D.  If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES.  Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.<br>☐ NO.  Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1.  Is there at least one answer in Column A? | D.2.  Is there at least one answer in Column B? |
|---|---|
| ☐ Yes   ☒ No | ☐ Yes   ☒ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes   ☒ No |

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

IX(a). **IDENTICAL CASES:** Has this action been previously filed **in this court?**          ☒ NO          ☐ YES

If yes, list case number(s): _____

IX(b). **RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**          ☐ NO          ☒ YES

If yes, list case number(s):   2:14-cv-02334-JFW-MRW

Civil cases are related when they:  (1) arise from the same or a closely related transaction, happening, or event; (2) call for determination of the same or substantially related or similar questions of law and fact; or (3) for other reasons would entail substantial duplication of labor if heard by different judges.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**          DATE: September 26, 2014

**Notice to Counsel/Parties:**  The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com